UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

LADMEN PARTNERS INC., Individually and On  :
Behalf of All Others Similarly Situated,         :

           :                        :     **No. 07-CV-0976 (LAP)**

                    Plaintiff,     :

                            :     **ECF CASE**

       v.                    :

GLOBALSTAR, INC., JAMES MONROE III    :
and FUAD AHMAD,                    :

                            :

                  Defendants.  :

-------------------------------------------------------------x

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**SCHOENGOLD & SPORN, P.C.**
Samuel P. Sporn (SS-4444)
Pietro deVolpi, Jr. (PD-4627)
19 Fulton Street, Suite 406
New York, New York 10038
Telephone: (212) 964-0046
Facsimile: (212) 267-8137
E-mail: sporn@spornlaw.com
        pietro@spornlaw.com

*Attorneys for the Lead Plaintiff*
*Connecticut Laborers' Pension Fund*
*and Counsel for the Class*

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   BACKGROUND ................................................................................................. 3

III.  ARGUMENT ...................................................................................................... 5

  A.  Class Counsel Who Recover a Common Fund for the Benefit of the Class is Entitled
      to Reasonable Attorneys' Fees and Reimbursement of Expenses ........................ 5

  B.  The Standards Governing the Award of Attorneys' Fees .................................... 6

  C.  The Requested Fee is Fair and Reasonable under the *Goldberger* Criteria ......... 8

    1.  The Time and Labor Expended by Class Counsel was Extensive .................. 8

    2.  The Magnitude, Complexity, and Risks of the Litigation ............................. 11

    3.  The Result Achieved and the Quality of Representation ............................. 13

    4.  The Requested Fee Is Fair, Reasonable, and Adequate In Relation to the Settlement . 14

      a.  The Percentage-of-Recovery Method ................................................ 14

      b.  The Lodestar Method .................................................................... 15

        i.   The Base Lodestar .................................................................. 16

        ii.  The Lodestar Multiplier and Cross Check  Indicate the Reasonableness of
             Fees Requested ..................................................................... 17

    5.  Public Policy Considerations .................................................................. 18

  D.  Minimal Objections by Class Members Underscores the  Reasonableness of the
      Fee Requested ................................................................................................. 19

  E.  Lead Plaintiff's Counsel's Expenses Were Reasonably Incurred and Necessary to
      the Prosecution of this Action and Should be Reimbursed ................................. 19

IV.   CONCLUSION .................................................................................................. 21

ii

## __TABLE OF AUTHORITIES__

**CASES**

*Amalgamated Clothing v. Wal-Mart Stores,*
 54 F.3d 69 (2d Cir. 1995)................................................................................................ 6

*Anixter v. Home-Stake Prod. Co.,*
 77 F.3d 1215 (10th Cir. 1996) ...................................................................................... 11

*Backman v. Polaroid Corp.,*
 910 F.2d 10 (1st Cir. 1990)............................................................................................ 11

*Behrens v. Wometco Enters., Inc.,*
 118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)....................... 13

*Berger v. Xerox Corp. Ret. Income Guarantee Plan,*
 No. 00-584, 2004 U.S. Dist. LEXIS 1819, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004).............. 5

*Blum v. Stenson,*
 465 U.S. 886 (1984)........................................................................................................ 15

*Boeing Co. v. Van Gemert,*
 444 U.S. 472 (1980).................................................................................................... 5, 6

*Branca v. Paymentech, Inc.,*
 No. 97-cv-2507-l, slip op. (N.D. Tex. Jan. 4, 2001) .................................................... 15

*Braun v. Culp, Inc.,*
 No. C-84-455-G, 1985 U.S. Dist. LEXIS 20373 (M.D.N.C. Apr. 26, 1985) ........................... 10

*Catullo v. Metzner,*
 834 F.2d 1075 (1st Cir. 1987)......................................................................................... 6

*Danis v. USN Commc'n, Inc.,*
 189 F.R.D. 391 (N.D. Ill. 1999)..................................................................................... 14

*DeSantis v. Snap-On Tools Co., LLC ("Snap-on I"),*
 No. 06-cv-2231 (DMC), 2006 U.S. Dist. LEXIS 78362 (D.N.J. Oct. 27, 2006)....................... 5

iii

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ............................................................................... 11

*Dura Pharmaceuticals, Inc. v. Broudo,*
    544 U.S. 336 (2005) ......................................................................................... 10

*Eisenstadt v. Centel Corp.,*
    113 F.3d 738 (7th Cir. 1997) ............................................................................ 11

*Freedman v. Value Health, Inc.,*
    34 F. App'x. 408 (2d. Cir. 2002) ...................................................................... 11

*Goldberger v. Integrated Res., Inc.,*
    209 F.3d 43 (2d Cir. 2000) ......................................................................... *passim*

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ......................................................................................... 13

*In re Acceptance Ins. Cos. Sec. Litig.*
    423 F.3d 899 (8th Cir. 2005) ............................................................................ 11

*In re American Bank Note Holographics,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................... 8, 20, 21

*In re Bank One S'holder Class Actions,*
    96 F. Supp. 2d 780 (N.D. Ill. 2000) ................................................................. 14

*In re Bisys Sec. Litig.,*
    No. 04 Civ. 3840 (JSR), 2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 16, 2007) .......... 2, 5, 15

*In re Blech Sec. Litig.,*
    No. 94 Civ. 7696(RWS), 2000 WL 661680 (S.D.N.Y. Mary 19, 2000) ........................... 16, 18

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    216 F.R.D. 197 (D. Me. 2003) .......................................................................... 19

*In re Currency Conversion Fee Antitrust Litig.,*
    01 MDL No. 1409, 2009 U.S. Dist. LEXIS 101950 (S.D.N.Y. Oct. 22, 2009) .................... 6, 15

*In re Elan Sec. Litig.,*
    385 F. Supp. 2d 363 (S.D.N.Y. 2005) ................................................................. 8

iv

*In re Gilat Satellite Networks, Ltd.*,
   No. 02-cv-1510, 2007 U.S. Dist. LEXIS 68694 (E.D.N.Y. Sept. 18, 2007) ........................ 2, 17

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... 8, 11, 13, 16

*In re Independent Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003).................................................................................... 21

*In re King Res. Co.Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976)........................................................................................ 13

*In re Master Key Antitrust Litig.*,
   M.D.L. Docket No. 45, 1977 U.S. Dist. LEXIS 12948 (D. Conn. Nov. 14, 1977) ................. 18

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................................................ 17

*In re N. Telecom, Ltd. Sec. Litig.*,
   116 F. Supp. 2d 446 (S.D.N.Y. 2000).................................................................................. 11

*In re Polaroid ERISA Litig.*,
   No. 03 Civ. 8335 (WHP), 2007 U.S. Dist. LEXIS 51983 (S.D.N.Y. July 19, 2007) ....... 2, 5, 15

*In re Prudential Bache Energy Income P'ships Sec. Litig.*,
   No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) .............................................................. 15

*In re Ravisent Technologies, Inc. Sec. Litig.*,
   No. 00-cv-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005)..................................................... 15

*In re Toys "R" Us Antitrust Litig.*,
   191 F.R.D. 347 (S.D.N.Y. 2000) ........................................................................................ 18

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Lit.*,
   724 F. Supp. 160 (S.D.N.Y. 1989)........................................................................................ 7

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................................... 6

*In re Warner Comms. Sec. Litig.*, 618 F. Supp.
   735 (S.D.N.Y. 1985)................................................................................................... 6, 13

*In re WorldCom, Inc. Sec. Litig.*,
02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004)...................... 17

*In re Xcel Energy, Inc., Sec., Derivatives & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)........................................................................ 5

*Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................... 8

*Kopet v. Esquire Realty Co.*,
523 F.2d 1005 (2d Cir. 1975)...................................................................................... 5

*Kurzweil v. Phillip Morris Cos., Inc.*,
94 Civ. 2373, 2546 (MBM), 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 30, 1999).......... 17

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................ 8, 14, 15, 17

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970)...................................................................................................... 5

*Millsap v McDonnell Douglas Corp.*,
No. 94-CV-633, 2003 U.S. Dist. LEXIS 26223, 2003 WL 21277124
(N.D. Okla. May 28, 2003) ......................................................................................... 5

*Missouri v. Jenkins*,
491 U.S. 274 (1989)................................................................................................... 17

*Perry v. FleetBoston Fin. Corp.*,
229 F.R.D. 105 (E.D. Pa. 2005)................................................................................ 18

*Rabin v. Concord Assets Group*,
No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. 1991) ......................... 17

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)........................................................................ 14, 21

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ................................................................................ 11

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997)............................................................................ 17

*Silberblatt v. Morgan Stanley,*
    524 F. Supp. 2d 425 (S.D.N.Y. 2007); ................................................................... 17

*Strougo v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................... 14

*Velez v. Majik Cleaning Service, Inc.,*
    No. 03-cv-8698-SAS-KNF, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ... 2, 5, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005)..................................................................................... 7

## STATUTES

Section 11 of the Securities Act of 1933,
    15 U.S.C. § 77k........................................................................................................ 4

Section 12 of the Securities Act of 1933,
    15 U.S.C. § 77l(a)(2)............................................................................................... 4

Section 15 of the Securities Act of 1933,
    15 U.S.C. § 77o....................................................................................................... 4

Section 27(a)(6) of the Securities Act of 1933,
    15 U.S.C. § 77z-1(a)(6)........................................................................................... 9

Section 27(b) of the Securities Act of 1933,
    15 U.S.C. 77z-1(b).................................................................................................. 3

## I.    **PRELIMINARY STATEMENT**

Petitioners herein (also referred to as "Lead Plaintiff's Counsel" and "Class Counsel") are Court-appointed Lead Counsel for the Lead Plaintiff Connecticut Laborers' Pension Fund (the "Lead Plaintiff" or "Class Representative") and Class Counsel for a class (the "Class") who purchased pursuant to a $127.5 million initial public offering of 7.5 million shares of Globalstar common stock at $17.00 per share on or about November 3, 2006 (the "Offering" or the "IPO").[1]

Petitioners respectfully refer to and incorporate by reference the comprehensive background and recitations of the extensive work on the prior pleadings and motions to dismiss, the subsequent investigation of counsel, the intensive and extensive appellate process, and the long, numerous and arduous arms'-length settlement efforts and negotiations as set forth in the accompanying Memorandum of Law in Support of Final Approval of the Class Action Settlement and Declaration of Samuel P. Sporn, Esq.

Through their extensive efforts, Petitioners have secured a common fund for a substantial benefit to the Class of one million five-hundred thousand dollars ($1,500,000.00).  The Settlement provides that defendants Globalstar, Inc. ("Globalstar" or the "Company"), Wachovia Capital Markets, LLC ("Wachovia"), J.P. Morgan Securities, Inc. ("JPMorgan") and Jefferies & Company, Inc. (identified in the Second Amended Complaint as Jeffries & Co., Inc., hereinafter "Jefferies") (collectively the "Defendants") will pay a cash settlement of $1,500,000 despite this Court dismissing all claims raised against the Defendants on September 30, 2008.[2]

---

[1]     Excluded from the Class are the Defendants in the above captioned action, members of the immediate families of the Individual Defendants, any entity in which any Defendant has a controlling interest, and the legal representatives, heirs, successors, or assigns of any Defendant.  Also excluded are those Persons who timely and validly request exclusion from the Class pursuant to the Settlement Notice.

[2]     Also named as defendants in the Complaint were James Monroe III and Fuad Ahmad (referred to in

This Settlement was made possible through the diligent efforts and perseverance of Lead Plaintiff's Counsel and Lead Plaintiff Connecticut Laborers' Pension Fund. The attorneys' fee requested herein is $300,000 or 20% of the total value of the $1,500,000 cash settlement and is believed to be eminently fair and reasonable as it is substantially less than Lead Counsel's lodestar of $454,207.00 and well below fees awarded in this Circuit. *See, e.g., Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370  (S.D.N.Y. 2002) (awarding attorneys' fees of 33.33%); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335 (WHP), 2007 U.S. Dist. LEXIS 51983, at *8 (S.D.N.Y. July 19, 2007) (awarding attorneys' fees of 28%); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 U.S. Dist. LEXIS 51087, at *10 (S.D.N.Y. July 16, 2007) (awarding attorneys' fees of 30%); *Velez v. Majik Cleaning Service, Inc.*, No. 03-cv-8698-SAS-KNF, 2007 U.S. Dist. LEXIS 46223, at *25 (S.D.N.Y. June 22, 2007) (recommending attorneys fees of 30% of $220,000 settlement).  It should be noted that courts in the Second Circuit have used a range of 25% as a "benchmark" in similar securities class actions. *See, e.g., Goldberger*, 209 F.3d at 52 (citations omitted); *In re Gilat Satellite Networks, Ltd.*, No. 02-cv-1510, 2007 U.S. Dist. LEXIS 68694, at *32-33, 58-59 (E.D.N.Y. Sept. 18, 2007) (awarding counsel fee of 25% where counsel had engaged in "little formal discovery" and the parties entered mediation following the pleadings stage).  Since Plaintiff's complaint was dismissed by this Court on September 30, 2008 and no formal discovery took place during the pendency of the motion due to the prohibition of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* Securities Act of 1933, § 27(b) (codified as amended at 15 U.S.C. 77z-1(b)).  Petitioners believe that a 20% contingency fee is appropriate in these circumstances.  It is to be noted should Court grant a 20% contingency fee totaling $300,000, it would represent

previous filings to this Court as the "Individual Defendants"), who were officers of Globalstar and are included

approximately a 33% negative multiple of Lead Plaintiff's Counsel's lodestar of $454,207. (*See* Declaration of Samuel P. Sporn in Support of the Motion for Final Approval of the Settlement, Request for Attorneys' Fees and Reimbursement of Expenses (the "Sporn Declaration") Ex. A).

This memorandum focuses on the legal standards applicable to attorneys' fee and expense requests by successful plaintiffs' attorneys in class action litigation, and the appropriateness of the fees and reimbursement of expenses requested by Lead Plaintiff's Counsel in this case. It is respectfully submitted that numerous factors support this application, including the substantial benefits Lead Plaintiff's Counsel have achieved for the members of the Class; the numerous and significant risks undertaken on a wholly contingent basis by Lead Plaintiff's Counsel over a period extending approximately three years; the factual and legal difficulties in this complex case; the diligent and skillful prosecution by Lead Plaintiff's Counsel; and the complete absence of objections or requests for exclusion by members of the Class to the requested fees and expenses, which reflect the Class' approbation of the proposed Settlement.[3]

## II.   BACKGROUND

For approximately three years, since the initial complaint was filed on behalf of the class in February 2007 and Connecticut Laborers' Pension Fund submitted its April 10, 2007 Motion for Consolidation, Appointment of Lead Plaintiff, and Approval of Lead Counsel, the Lead Plaintiff has litigated this case to the best of its ability, alleging Defendants' violations of Sections 11, 12, and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o, respectively. Prior to the

---

among individuals and entities which constitute Globalstar.

[3]     Submitted simultaneously herewith are Lead Plaintiff's Memorandum of Law in Support of Final Approval of the Class Action Settlement (the "Settlement Brief"), the Sporn Declaration, and the Affidavit of Jose Fraga, Re: Mailing and Publication of Notice and Requests for Exclusion, sworn to on February 2, 2010 (the "Claims Administrator Affidavit").

3

institution of the litigation, Lead Counsel conducted a substantial factual and legal investigation of the issues. Lead Plaintiff alleged, *inter alia*, that Defendants made material misstatements and omissions in the Offering Prospectus effective November 3, 2006 regarding Globalstar's current operations in order to assure investors of the Company's ability to sustain the necessary level of revenues needed to fund a second generation of satellites ("2G satellites" or "2G Constellation").

Lead Plaintiff filed a Securities Class Action Consolidated Amended Complaint (the "First Amended Complaint") on August 15, 2007. Based on its continued investigation of underlying claims, Lead Plaintiff then filed the "Second Amended Complaint" on November 15, 2007. On February 15, 2008, Defendants responded by filing their Motions to Dismiss the Second Amended Complaint. After extensive briefing and in a long and fully reasoned opinion, the Court entered an order dismissing the Second Amended Complaint on September 30, 2008.

On October 29, 2008, the Lead Plaintiff filed a notice of appeal of the dismissal of the Second Amended Complaint. Counsel for the Lead Plaintiff prepared and filed a Civil Appeal Pre-Argument Statement and met with Staff Counsel Stanley A. Bass, Esq. from the Office of Staff Counsel for the United States Court of Appeals for the Second Circuit (the "Court of Appeals"). On January 30, 2009, Lead Plaintiff's Counsel filed its brief as Appellant in the Court of Appeals. Between the 30th and 31st day of March 2009, Defendants filed their briefs as Appellees. Discussions regarding settlement continued even during the briefing period.

Before the Lead Plaintiff filed a reply to Defendants-Appellees' briefs, the parties continued their settlement negotiations. As a result of the long and extensive arms'-length settlement negotiations, the parties stipulated to a withdrawal of the appeal and have entered into the proposed

4

$1,500,000 cash settlement, subject to the approval of the Court. Accordingly, as explained below, Class Counsel believe that their requested fee and expense application is fair and reasonable and should be approved as it provides a cash benefit to members of the class and is substantially below their lodestar of $454,207.00.

## III.   ARGUMENT

### A.   Class Counsel Who Recover a Common Fund for the Benefit of the Class is Entitled to Reasonable Attorneys' Fees and Reimbursement of Expenses

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-97 (1970); *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975); *DeSantis v. Snap-On Tools Co., LLC* ("*Snap-on I*")*, No. 06-cv-2231 (DMC), 2006 U.S. Dist. LEXIS 78362, at *9, 24 (D.N.J. Oct. 27, 2006). As aforestated, in this Circuit and elsewhere, courts regularly have awarded over the 25% benchmark figure. *See,.e.g., In re Polaroid*, 2007 U.S. Dist. LEXIS 51983, at *8 (S.D.N.Y. awarding 28%); *In re Bisys,* 2007 U.S. Dist. LEXIS 51087, at *10 (S.D.N.Y. awarding 30% to counsel); *Velez*, 2007 U.S. Dist. LEXIS 46223, at *25 (S.D.N.Y. recommending attorneys fees of 30%).[4] Often, the courts take into account the size of the recovery, *i.e.*, the greater the recovery, the less of a contingency fee awarded. *See In re Currency Conversion Fee Antitrust Litig.*, 01 MDL No. 1409, 2009 U.S. Dist. LEXIS 101950, at *56-57

---

[4]     *See also, e.g., In re Xcel Energy, Inc., Sec., Derivatives & ERISA Litig.*, 364 F. Supp. 2d 980, 1005 (D. Minn. 2005) (25% fee award out of $8 million common fund); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, No. 00-584, 2004 U.S. Dist. LEXIS 1819, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (fee award of 29% of $300 million common fund); *Millsap v McDonnell Douglas Corp.*, No. 94-CV-633, 2003 U.S. Dist. LEXIS 26223, 2003 WL 21277124, at *15 (N.D. Okla. May 28, 2003) (fee award of 25% of $36 million fund).

(S.D.N.Y. Oct. 22, 2009) (citation omitted); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 521 (E.D.N.Y. 2003) (citations omitted). Here, the recovery is in the lower range, so a 20% award should be deemed fair and reasonable. *See In re Currency Conversion Fee Antitrust Litig.*, 2009 U.S. Dist. LEXIS 101950, at *56-57 (comparing the "range of fee awards in other recent class actions in [the Second] Circuit" (citations omitted)).

The purpose behind granting attorneys adequate compensation is to fairly and adequately compensate plaintiffs' counsel for services rendered and to "prevent[] the unjust enrichment of persons who benefit from a lawsuit without shouldering its costs." *E.g.*, *Amalgamated Clothing v. Wal-Mart Stores*, 54 F.3d 69, 71 (2d Cir. 1995) ("Th[e common fund doctrine] is premised on the equitable principle that 'persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.'" (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980))); *accord Catullo v. Metzner*, 834 F.2d 1075, 1083 (1st Cir. 1987) (citing *Boeing Co.*, 444 U.S. at 478).

This, in turn, has the effect of encouraging skilled counsel to represent those who seek redress for damages and to discourage future alleged misconduct of a similar nature. *See In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 748-51 (S.D.N.Y. 1985) (explaining that "[t]he quality of work of plaintiffs' counsel [can be] demonstrated by the efficient manner of prosecution" and that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance") (citations omitted).

**B.    The Standards Governing the Award of Attorneys' Fees**

Courts have used two methods to calculate attorneys' fees in class actions: the "percentage of recovery" approach and the "lodestar" approach. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43,

6

45-47 (2d Cir. 2000). Under the "percentage of recovery" approach, which is the usual and preferred method, the fee is based on a percentage of the fund recovered for the Class. Under the "lodestar" approach, *i.e.*, the number of hours spent by each legal professional multiplied by the hourly rate for each professional, a court can then determine what multiplier is appropriate in light of such factors as the difficulties of the case, the benefits achieved, the contingent nature of the representation and the quality of the work performed. *Id.* The Second Circuit in *Goldberger* held that regardless of the method employed for determining the amount of attorneys' fees, the same criteria should guide a court's analysis:

> [N]o matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Id.* at 50 (quoting *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Lit.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)). As the *Union Carbide* court observed in applying these criteria, "a Court essentially makes no more than a qualitative assessment of a fair legal fee under all of the relevant circumstances of the case." 724 F. Supp. at 166.

The Second Circuit regularly has approved the use of the percentage of the fund method when awarding attorneys' fees. In expressly accepting the percentage method, the Second Circuit has recognized that the lodestar method is cumbersome and often leads to waste of judicial resources. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).[5] The

---

[5]    As recently noted by a court in this Circuit, the "trend in the Second Circuit is toward the percentage approach rather than the 'cumbersome, enervating, and often surrealistic process' of evaluating fee petitions under the lodestar/multiplier approach." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) (quoting *Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *5 n.13 (S.D.N.Y. Sept. 29, 2003)); *see In re Elan Sec. Litig.*, 385 F. Supp. 2d. 363, 373 (S.D.N.Y. 2005) ("[t]he trend in this Circuit is toward the percentage method").

PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff shall not exceed a reasonable percentage of the amount" recovered for the Class. *See* Securities Act of 1933, § 27(a)(6) (codified as amended at 15 U.S.C. § 77z-1(a)(6)). Courts in this Circuit have concluded that by drafting the PSLRA as it did, Congress expressed a preference for the percentage method for determining attorneys' fees in securities class actions. *See, e.g., Maley* 186 F. Supp. 2d at 370; *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).

In sum, there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery, and that method should be applied in this common fund case.

### C.    The Requested Fee is Fair and Reasonable under the *Goldberger* Criteria

The fee requested here is fair and reasonable and meets all of the criteria set forth by the Second Circuit in *Goldberger*.

### 1.    The Time and Labor Expended by Class Counsel was Extensive

Class Counsel expended substantial time and effort pursuing this Action on behalf of the Class over the course of two full years. In that time, Class Counsel devoted 931.68 hours to this Action with a resulting lodestar of $454,207.00. *See* Sporn Declaration Ex. A-C. As such, a 20% fee award would result in a negative multiplier awarding Class Counsel only approximately 66% of their lodestar.

In the course of this action, Class Counsel conducted a thorough investigation and diligent prosecution, including:

---

Indeed, as the Court noted in *Global Crossing*, the percentage approach "aligns the class members and Class Counsel's interests and moreover provides a powerful incentive or the efficient prosecution and early resolution of litigation." 225 F.R.D. at 466.

- conducting factual and legal investigation of all relevant SEC filings and media reports of pending litigation against Globalstar arising out of potential misrepresentations to customers;

- consulting with former employees, experts and other consultants on damages and loss causation;

- drafting and filing Connecticut Laborers' Pension Fund's Motion for Consolidation, Appointment of Lead Plaintiff, and Approval of Lead Counsel

- drafting and filing the First Amended Complaint;

- drafting the filing the Second Amended Complaint;

- preparing written arguments for the Court opposing Defendants' motions to dismiss;

- continuing legal and factual research during pendency of the Motion to Dismissing and conducting numerous and lengthy settlement negotiations

- filing a Notice of Appeal;

- preparing a Pre-Argument Statement for the Court of Appeals;

- preparing for and meeting with Mr. Stanley A. Bass, Esq. from the Office of Staff Counsel pursuant to the Civil Appeals Management Plan of the Court of Appeals;

- drafting and filing an argumentative brief in the Court of Appeals;

- preparing stipulations filed with the Court of Appeals to stay and ultimately withdraw the appeal without prejudice;

- engaging in lengthy, protracted, arms-length settlement negotiations;

- negotiating the Settlement and drafting the Stipulations of Settlement and its various exhibits, including the Notice and Summary Notice;

- petitioning the Court for preliminary approval of the Settlement and the form of Notice mailed to the Class; and

9

- setting up the claims administration process and drafting the plan of allocation with the aid of experts on damages.

Class Counsel undertook all of these efforts on a wholly contingent basis, investing substantial time, resources, and money to prosecute this Action without any guarantee of compensation. Unlike Defendants' counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Class Counsel have not been compensated for any time or expenses since this case began, but rather have expended considerable costs and expenses in the investigation and prosecution of this action.

Lead Plaintiff's counsel, Schoengold & Sporn, although very experienced in complex litigation, is a relatively small firm. Almost all of the attorneys then-employed at the firm worked on this case throughout the litigation. Perforce, the firm had to pass on taking some new matters or was precluded from other employment. *See Braun v. Culp, Inc.*, No. C-84-455-G, 1985 U.S. Dist. LEXIS 20373, at *6 (M.D.N.C. Apr. 26, 1985) (awarding 25% of settlement) ("In the complex field of securities class actions, there are only a few cases that may be worked on at a time. Any case undertaken by a lawyer requires time and effort for the client's behalf that is necessarily lost for other purposes."). Thus, the preclusion of engaging in other employment is another factor weighing heavily in favor of the grant of the requested fee in this matter.

Moreover, Lead Plaintiff's Counsel would have received no compensation or even reimbursement of expenses had this case not been successful - a distinct possibility in light of the dismissal of numerous class actions where plaintiffs' counsel expended great amounts of hours and yet received no remuneration whatsoever despite their diligence and expertise.[6] Even in cases where

---

[6]    *See, e.g., Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) (securities class action filed in 1997 was dismissed by the district court, reversed by the Ninth Circuit, and reversed again by the U.S. Supreme Court in 2005 with

10

a recovery is obtained, there is no guarantee that a reasonable percentage, even if awarded, would adequately compensate counsel.   In fact, in this case, the fee that Lead Plaintiff's Counsel is requesting is significantly less than Lead Plaintiff's Counsel's lodestar, resulting in a negative multiplier of approximately 33%, *i.e.* the fee requested is only approximately 66% of the lodestar expended.

### 2.    The Magnitude, Complexity, and Risks of the Litigation

As the Second Circuit has recognized, the risk associated with a complex case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974); *see also In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 467 (S.D.N.Y. 2004).  Indeed, the "risk[] of litigation" is "perhaps the foremost factor to be considered in determining a reasonable award."  *Global Crossing,* 225 F.R.D. at 467 (citation and internal quotations omitted).  In general, class action litigation usually is

---

the effect of affirming dismissal); *In re Acceptance Ins. Cos. Sec. Litig.* 423 F.3d 899 (8th Cir. 2005) (case dismissed at summary judgment stage, dismissal affirmed on appeal, after almost six years of litigation); *Freedman v. Value Health, Inc.,* 34 F. App'x. 408 (2d Cir. 2002) (affirming summary judgment granted after more than five years of litigation in case alleging violations of securities fraud in connection with a merger in which pharmaceutical services corporation acquired another company providing similar services); *In re N. Telecom, Ltd. Sec. Litig.,* 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (summary judgment granted after seven years of litigation); *Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and judgment entered for defendant); *Eisenstadt v. Centel Corp.,* 113 F.3d 738 (7th Cir. 1997) (affirmed the lower court's granting of summary judgment in favor of defendants); *Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) (overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation).

11

extremely risky. It was hard-fought by Defendants and finally resolved even after the Court dismissed the action and appellate briefs were prepared.

As described in detail herein, this action involved challenging causation and damages issues which would have been difficult to prove and explain to a jury. While trying this case would require an explanation to the jury of complex facts and figures and technological practices, Lead Plaintiff's Counsel also would have to explain to the jury why Globalstar's statements were materially misleading, or omitted to state material statements necessary to make the statements not misleading, and how the Class was damaged. These would require complex technical presentations by experts in each of these fields with no guarantee that a jury would find such presentations compelling.

Further, unlike the litigation in *Goldberger*, which was preceded by a lengthy government investigation that resulted in guilty pleas to charges of securities fraud, in this case Lead Plaintiff's Counsel did not have the benefit of a government investigation or findings relating to the Offering. Defendants steadfastly denied liability, disputed Plaintiff's characterization of Defendants' practices and asserted that Plaintiff suffered no damages at all. Moreover, this Court dismissed the claims asserted by Lead Plaintiff in the Second Amended Complaint.

Even assuming *arguendo* that Lead Plaintiff prevailed on appeal and thereafter on liability issues, Lead Plaintiff's Counsel faced the equally, if not more, difficult task of proving damages, which would have also required presenting at trial a highly technical and complex expert analysis and a damages theory which would have faced significant challenges. This might prove to be an insurmountable obstacle. Further, even if Lead Plaintiff were to win at trial, the decision might again face review in the Court of Appeals, and thereby be reversed.

### 3.    The Result Achieved and the Quality of Representation

The result achieved and the quality of the services provided are "important" factors to be considered in determining the amount of reasonable attorneys' fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 748-49 (S.D.N.Y. 1985); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). Here, this *Goldberger* factor also supports the requested fee award.

There is no question that Lead Plaintiff's Counsel were faced with formidable opposition in this Action. Defendants were represented by several of the most highly regarded law firms in the nation with extensive experience in class action litigation. That Lead Plaintiff's Counsel was able to obtain a substantial settlement in this action with a total cash benefit of $1.5 million while opposed by such formidable defense counsel is additional confirmation of the quality of their representation in this matter, and is another factor for the Court to consider in determining the reasonableness of Lead Plaintiff's Counsel's fee request. *See, e.g., Warner*, 618 F. Supp. at 749; *In re King Res. Co.Sec. Litig.*, 420 F. Supp. 610, 638 (D. Colo. 1976).

Finally, the reputation of Class Counsel should be considered and supports the reasonableness of the requested fee. *See, e.g., Global Crossing*, 225 F.R.D. at 468 (finding the lodestar cross-check met because, *inter alia*, "the lawyers involved have a record of successfully representing investors in securities class actions"); *Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. 1992). Lead Plaintiff's Counsel is a law firm with long and extensive experience in litigating

class actions, having specialized in the class action field for over 40 years. *See* Sporn Declaration Ex. F. As set forth in its firm resume, Lead Plaintiff's Counsel have served as lead counsel and co-lead counsel in many class actions, including multiple securities and derivative class actions, obtaining significant recoveries for class members. *See id.* The firm has been recognized as obtaining among the fifty highest total combined settlements for clients per annum by the Institutional Shareholder Services Securities Class Action Services (the "ISS SCAS 50") over numerous years. *See* Sporn Declaration Ex. D. Class Counsel's nationally respected reputation in this field has been recognized by courts. *See, e.g., Maley*, 186 F. Supp. 2d 358 (court commended Schoengold & Sporn for "go[ing] the extra mile" in obtaining a settlement); *In re Bank One S'holder Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000); *Danis v. USN Commc'n, Inc.*, 189 F.R.D. 391 (N.D. Ill. 1999). In *Maley*, Judge Colleen McMahon acknowledged Schoengold & Sporn's ability to obtain "an excellent benefit to the Class:"

> Through [Schoengold & Sporn's] efforts, after intensive investigation, concentrated litigation and extensive arm's-length bargaining, and without the benefit of any governmental agency's investigation, Class Counsel have secured a settlement fund which confers an excellent benefit to the Class . . . ."

186 F. Supp. 2d at 368. This Settlement represents a most favorable result for the Class that is attributable to the hard work and determination of Lead Plaintiff's Counsel.

### 4. The Requested Fee Is Fair, Reasonable, and Adequate In Relation to the Settlement

#### a. The Percentage-of-Recovery Method

The percentage-of-recovery method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Strougo v. Bassini*, 258 F. Supp. 2d 254,

262 (S.D.N.Y. 2003) (awarding 33.33% of settlement valued at $1.5 million to be paid by defendant). In personal injury non-class litigation, 33 $^{1}/_{3}$% contingency fees are typical. As Justices Brennan and Marshall observed in their concurring opinion in *Blum v. Stenson,* 465 U.S. 886 (1984): "In tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Id.,* 902 n.19; *see also In re Prudential Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *2 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.").

The fee requested in this case – 20% of the Settlement Fund – is less than the fee often awarded in this Circuit and others. *See, e.g., Maley*, 186 F. Supp. 2d at 370 (awarding attorneys' fees of 33.33%); *In re Polaroid*, 2007 U.S. Dist. LEXIS 51983, at *8 (awarding attorneys' fees of 28%); *In re Bisys*, 2007 U.S. Dist. LEXIS 51087, at *10 (awarding attorneys' fees of 30%); *Velez*, 2007 U.S. Dist. LEXIS 46223, at *25 (awarding 30% of $220,000 settlement); *Branca v. Paymentech, Inc.*, No. 97-cv-2507-l, slip op. at 6 (N.D. Tex. Jan. 4, 2001) (approving attorney's fees of 33 1/3% of $2 million settlement fund in securities class action); *In re Ravisent Technologies, Inc. Sec. Litig.*, No. 00-cv-1014, 2005 WL 906361 at, *15 (E.D. Pa. Apr. 18, 2005) (approving attorneys' fees of 33 1/3% of $7 million settlement fund in securities class action); *see also In re Currency Conversion Fee Antitrust Litig.*, 01 MDL No. 1409, 2009 U.S. Dist. LEXIS 101950, at *58-59 (S.D.N.Y. Oct. 22, 2009) (awarding 15.25% in a "mega-fund" case in line with awards for cases involving similar settlements) (citations omitted).

### b.    **The Lodestar Method**

15

As demonstrated above, the 20% fee sought here is well below the percentage frequently awarded in comparable cases. The reasonableness of this request is confirmed by cross-checking the proposed award against the lodestar of Lead Plaintiff's Counsel. *See Goldberger*, 209 F.3d at 50; *Global Crossing*, 225 F.R.D. at 468. Here, the negative multiplier of 33%, as shown in the Sporn Declaration, confirms that a 20% fee award is reasonable and to the class and serves to compensate Lead Plaintiff's Counsel for the work done in this case. *See, e.g., In re Blech Sec. Litig.*, No. 94 Civ. 7696(RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000).

In order to perform the lodestar cross check, a court must engage in a two step analysis. First, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate. Second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorneys' work. *Goldberger*, 209 F.3d at 50; *Global Crossing*, 225 F.R.D. at 468.

### i.    The Base Lodestar

In total, Lead Plaintiff's Counsel spent 931.68 hours working on this case. *See* Sporn Declaration Ex. A. The calculation of hours expended multiplied by each attorneys' respective hourly rate demonstrates that the aggregate "base" lodestar for Lead Plaintiff's Counsel's efforts is $454,207.00. *Id.* In determining whether the rates used to perform this calculation are reasonable, the Court should take into account the attorneys' legal reputation, experience, and status. The Supreme Court and other courts have held the use of *current* rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-85

16

(1989). The rates charged by Lead Plaintiff's Counsel have been submitted and approved by courts in this Circuit in prior cases. *See, e.g, Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 434 (S.D.N.Y. 2007); *In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, at *80-81 (S.D.N.Y. Nov. 12, 2004); *Maley,* 186 F. Supp. 2d at 370.[7]

### ii.    The Lodestar Multiplier and Cross Check Indicate the Reasonableness of Fees Requested

While approval of the 20% attorneys' fee award would result in a *negative* multiplier of approximately 33%. Courts in this Circuit have found a range of *positive* multipliers reasonable for cross-check purposes and justified given the quality of the legal services rendered and the results achieved. *See Maley,* 186 F. Supp. 2d at 369 (agreeing to a multiplier of 4.65); *Kurzweil v. Phillip Morris Cos., Inc.*, 94 Civ. 2373, 2546 (MBM), 1999 U.S. Dist. LEXIS 18378, at *8 (S.D.N.Y. Nov. 30, 1999) (noting that multipliers between 3 and 4.5 are common in federal securities cases); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (agreeing to a multiplier of 5.5); *Rabin v. Concord Assets Group*, No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273, at *3-4 (S.D.N.Y. 1991) (using a multiplier of 4.4 and recognizing that "multipliers of between 3 and 4.5 have been common"). Here, in light of the negative multiplier, the amount requested is more than justified given a review of the magnitude, complexity and risks of this Action, summarized herein. *See Blech*, 2000 WL 661680, at *5 (reasonableness of plaintiffs' request for fees "is reinforced by evidence that the percentage fee would represent a negative multiplier of the lodestar").

---

[7]The fees are also within the range approved for other law firms by courts in this circuit. *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142-43 (S.D.N.Y. 2008) (approving hourly rate of $615 for named partner and $350 for associates); *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510 (CPS) (SMG), 2007 U.S. Dist. LEXIS 68964, at *54 (E.D.N.Y. Sept. 18, 2007) (finding that hourly rates of $725 per hour for partners and $325 per hour for associates were reasonable).

The requested fee, therefore, is manifestly reasonable, both calculated as a percentage of the fund, and in relation to the lodestar.

### 5.    Public Policy Considerations

Class actions serve as a deterrent against unlawful corporate behavior. *See In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (S.D.N.Y. 2000) ("Together with the required cash payments, [the distribution of toys] serve[s] as a sufficient deterrent to unlawful behavior."). To effectuate their purpose of protecting consumers, courts should encourage private enforcement lawsuits. *See, e.g., Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 122-23 (E.D. Pa. 2005) ("The type of litigation undertaken by class counsel here, which addresses important consumer concerns that would likely be ignored without such class action lawsuits, must be encouraged."); *In re Master Key Antitrust Litig.*, M.D.L. Docket No. 45, 1977 U.S. Dist. LEXIS 12948; at *8, n.7 (D. Conn. Nov. 14, 1977) ("In fixing a reasonable fee, the court should also recognize . . . the policy of the law in class actions... is to provide a motive to private counsel to represent consumers and to enforce the laws.") (citation and internal quotes omitted). The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, and likely would not do so with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves. Lawyers that pursue private suits such as this on behalf of consumers and investors augment overburdened governmental agencies. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 208 (D. Me. 2003) (plaintiffs' counsel obtained five year injunction against three defendants, relief that was not obtained by the Federal Trade Commission).

18

Without the willingness of Lead Plaintiff's Counsel to assume the risks associated with this Action, members of the Class would not have recovered anything. As society benefits from strong advocacy on behalf of consumers, public policy favors the granting of the within fee and expense application.

**D.   Minimal Objections by Class Members Underscores the Reasonableness of the Fee Requested**

The reasonableness of the requested fee is underscored by the lack of any significant objections to it on the part of Class members. *In re Am. Bank Note,* 127 F. Supp. 2d at 425. Approximately 6,219 copies of the Notice were mailed to potential members of the Class specifically indicating that Lead Plaintiff's Counsel would apply for a fee award of 20% of the total value of the Settlement, for reimbursement of expenses, and that any class member could object to the fee and expense application. Claims Administrator Aff. ¶ 8 & Ex. A. Additionally, a Summary Notice was published in the November 6, 2009 edition of *Investor's Business Daily. Id.* ¶ 5 & Ex. B. The last day for class members to submit an objection to the Settlement or fee application was January 28, 2010. As of this writing, no requests for exclusion have been submitted, *see id.* ¶ 9, and no objections to either the Settlement or Lead Plaintiff's Counsel's fee and expense application have been received, *see* Sporn Declaration ¶ 9. This lack of objection evidences the Class's favorable reaction that the Settlement and the fee and expense application and award to the Class Representative are fair, reasonable and appropriate.

**E.   Lead Plaintiff's Counsel's Expenses Were Reasonably Incurred and Necessary to the Prosecution of this Action and Should be Reimbursed.**

In addition to the $300,000 in requested fees, Class Counsel also request reimbursement of $84,035.42 in expenses reasonably incurred while prosecuting this action, as itemized in Sporn

19

Declaration Ex. D. These expenses are recorded in the regular books and records of Lead Plaintiff's Counsel. The Claims Administrator expects to incur additional expenses as the claims are processed, and will seek reimbursement at a later date.

These expenses are properly recoverable by counsel and the claims administrator. *See, e.g., In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (stating a court may compensate class counsel for reasonable out-of-pocket expenses necessary to the representation of the class). Costs and expenses accrued include those for investigation, filing fees, copying, professional services rendered by experts, computerized research, appellate fees, postage, and delivery charges. *E.g., id.*; *see* Sporn Declaration Ex. D. Lead Plaintiff's Counsel submits that the costs and expenses itemized in its declaration were both necessary and reasonable. Sporn Declaration ¶ 5. Accordingly, Lead Plaintiff's Counsel asks that they be reimbursed for such costs and expenses. *See American Bank Note*, 127 F. Supp. 2d at 433; *Ressler*, 149 F.R.D. at 657.

20

## IV.    **CONCLUSION**

Based on the foregoing and the entire record, Lead Plaintiff's Counsel respectfully request

that the Court award : (1) attorneys' fees in the amount of $300,000 (20% of the total value of the

$1,500,000 Settlement), and (2) $84,035.42 in expenses incurred in litigating the Action.

Dated: New York, New York
      February 4, 2010

                                  Respectfully submitted,

                                  SCHOENGOLD & SPORN, P.C.

                                  Samuel P. Sporn (SS-4447)
                                  Pietro deVolpi, Jr. (PD-4627)
                                  19 Fulton Street, Suite 406
                                  New York, New York 10038
                                  Telephone: (212) 964-0046
                                  Facsimile: (212) 267-8137
                                  E-mail: sporn@spornlaw.com
                                                      pietro@spornlaw.com

                                  *Attorneys for the Lead Plaintiff*
                                  *Connecticut Laborers' Pension Fund*
                                  *and Counsel for the Class*

                                  ADDITIONAL COUNSEL:

                                  Joel P. Laitman, Esq.
                                  Christopher Lometti, Esq.
                                  COHEN MILSTEIN SELLERS
                                  & TOLL, PLLC
                                  150 East 52nd Street
                                  Thirtieth Floor
                                  New York, New York 10022

                                  *Additional Counsel for Lead Plaintiff*
                                  *Connecticut Laborers' Pension Fund*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
LADMEN PARTNERS INC., Individually and On  :
Behalf of All Others Similarly Situated,          :
                                                              :
                                                              :          No. 07-CV-0976 (LAP)
                        Plaintiff,                 :
                                                              :          **ECF CASE**
            v.                                      :
                                                              :
GLOBALSTAR, INC., JAMES MONROE III     :
and FUAD AHMAD,                                 :
                                                              :
                        Defendants.           :
------------------------------------------------------------x

<u>**CERTIFICATE OF SERVICE**</u>

I, Pietro deVolpi, Jr., one of the counsel for Lead Plaintiff Connecticut Laborers' Pension

Fund, hereby certify and say that on February 4, 2010, I served a copy of the Memorandum of

Law in Support of an Award of Attorneys' Fees and Reimbursement of Expenses to the

following counsel of record by first class and electronic mail:

W. Stuart Dornette, Esq.
L. Clifford Craig, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Email: dornette@taftlaw.com
        craigc@taftlaw.com

*Counsel for Defendants Globalstar Inc., Fuad*
*Ahmad, and James Monroe*

Charles C. Platt, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Email: charles.platt@wilmerhale.com

*Counsel for Defendants Globalstar Inc., Fuad*
*Ahmad, and James Monroe III*

Mitchell A. Lowenthal, Esq.
Clearly Gottlieb Steen & Hamilton, LLP
1 Liberty Plaza
New York, New York 10006
Email: mlowenthal@cgsh.com

*Counsel for Defendants Jeffries & Company, Inc.,*
*J.P. Morgan Securities, Inc., and Wachovia Capital*
*Markets LLC*

Joel P. Laitman, Esq.
Christopher Lometti, Esq.
Daniel B. Rehns, Esq.
Cohen Milstein Sellers & Toll, PLLC
150 East 52nd Street
Thirtieth Floor
New York, New York 10022
Email: jlaitman@cohenmilstein.com
       clometti@cohenmilstein.com
       drehns@cohenmilstein.com

*Additional Counsel for Lead Plaintiff Connecticut*
*Laborers' Pension Fund*

David Avi Rosenfeld, Esq.
Samuel Howard Rudman, Esq.
Coughlin Stoia Geller Rudman & Robbins, LLP
58 South Service Road
Suite 200
Melville , NY 11747
Email: drosenfeld@csgrr.com
       srudman@csgrr.com

*Counsel for Plaintiff Ladmen Partners, Inc.*

Pietro deVolpi, Jr.

2